WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Candace S. Walters,<br><br>Plaintiff,<br><br>v.<br><br>Odyssey Healthcare Management Long Term Disability Plan, et al.,<br><br>Defendants. | No. CV-11-00150-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Candace S. Walter's Motion for Remand to Plan Administrator (Doc. 47) requesting that the Court order defendant Plan Administrator to review Plaintiff's long-term disability claim and render a decision in accordance with applicable ERISA rules and regulations and in accordance with the terms of the plan. Also pending is Plaintiff's Motion for Partial Summary Judgment (Doc. 48) on Plaintiff's breach of fiduciary duty claim against defendant Plan Administrator. Plaintiff additionally requests that, as an equitable remedy under ERISA, the Court remand Plaintiff's long-term disability claim to defendant Plan Administrator. (*Id.* at 7–9). Likewise pending is defendants Odyssey Healthcare Management Long Term Disability Plan and Plan Administrator's (collectively, the "Defendants") Motion for Summary Judgment (Doc. 50).

The three pending motions are fully briefed and the Court heard oral argument on August 26, 2014. For the reasons explained below, the Court grants Defendants' Motion for Summary Judgment (Doc. 50) and denies Plaintiff's two motions (Docs. 47–48).

## I. BACKGROUND[1]

Odyssey Healthcare Management ("Odyssey") hired Plaintiff as a registered nurse on April 22, 2003. (Pl. Statement of Facts ("PSOF"), Doc. 49 ¶ 1). As a new employee, Plaintiff elected to enroll in a long-term disability coverage plan offered by Odyssey. (Admin. Record, Doc. 49-1 at 54–57). In October 2004, Plaintiff communicated with Odyssey's human resources representatives concerning Plaintiff's intention to take a medical leave of absence and to potentially apply for short-term disability benefits. (*Id.* at 63–64). In November 2004, Plaintiff completed paperwork related to her request for medical leave and short-term disability benefits. (*Id.* at 58–62). Later that month, during Odyssey's open enrollment for benefits period, Plaintiff elected not to change her current benefits, including long-term disability coverage. (*Id.* at 51).

According to Plaintiff's unverified Complaint (Doc. 1 at Ex. A), Plaintiff was employed by Odyssey until approximately January 2005 (*id.* ¶ 8). Plaintiff's unverified Complaint further alleges that, at some point, Plaintiff timely submitted a long-term disability claim to Defendants, but that Defendants refused to process the claim. (*Id.* at ¶¶ 10–11).

On December 17, 2010, Plaintiff filed suit in Maricopa County Superior Court asserting a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, based on Defendants' alleged denial of Plaintiff's claim for long-term disability benefits under the Plan. (Doc. 1 at Ex. A). On January 21, 2011, Defendants removed this action to this Court based on federal-question jurisdiction. (Doc. 1).

Eventually, the Parties filed a Joint Proposed Case Management Plan (Doc. 32) in which Plaintiff elaborated on the factual basis for her Complaint (*id.* at 2). During the pendency of discovery, Defendant disclosed the administrative record currently before the Court (Doc. 49-1 at Ex. A). Because the administrative record is so scant, Defendant

---

[1] In the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

attempted to investigate the factual basis for Plaintiff's claim that Defendants denied Plaintiff's application. Plaintiff, however, fought Defendants' attempts at discovery, arguing that supplementing the administrative record through discovery was both unnecessary and forbidden by Ninth Circuit Court of Appeals case law. (Mems. Re: Disc. Dispute, Docs. 44–45). Consequently, throughout this litigation, Plaintiff has steadfastly refused to comply with *any* discovery request, including answering interrogatories, allowing Plaintiff to be deposed, or submitting an affidavit.

After the close of discovery, Plaintiff filed the instant Motion for Remand (Doc. 47) and Motion for Partial Summary Judgment (Doc. 48). In support of Plaintiff's Motion for Partial Summary Judgment, Plaintiff submitted the PSOF. (Doc. 49). Plaintiff's PSOF relies, in large part, on Plaintiff's Affidavit (Doc. 49-1 at Ex. B), which purports to supplement the administrative record and provide evidence proving Plaintiff's various factual allegations. Later, Defendants filed their own Motion for Summary Judgment (Doc. 50) and objections to, among other things, Plaintiff's submission of her Affidavit to supplement the administrative record.

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of materials in the record," including depositions, affidavits, interrogatory answers or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the

motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. Further, because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (internal citations omitted).

Finally, when multiple parties submit cross-motions for summary judgment, the Court considers each motion on its own merits but must consider all of the evidence presented in determining whether a genuine issue of material fact exists. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

**III.    EVIDENCE AT SUMMARY JUDGMENT**

In support of Plaintiff's Motion for Summary Judgment, Plaintiff submitted a Statement of Facts ("PSOF") supported by both the administrative record in this case (PSOF, Doc. 49-1 at Ex. A, 1–74) and Plaintiff's affidavit (PSOF, Doc. 49-1 at Ex. B, 75–80). Defendants, however, have filed an Objection (Doc. 59) to the admissibility of a majority of the PSOF. Defendants specifically object to numerous paragraphs on various

hearsay and foundational grounds. (*Id.* at 2–5 (objecting to PSOF ¶¶ 8, 18–21, 24, 28–33, 35–36, 39, 42–43)). Additionally, Defendants generally object to the admissibility of Plaintiff's Affidavit and, therefore, to the portions of the PSOF that rely on Plaintiff's Affidavit for support.[2] (*Id.* at 1–2 (objecting to PSOF ¶¶ 2–8, 10–22, 24–28, 33–42); Defs.' Resp. to Pl.'s Mot. for Partial Summ. J., Doc. 60 at 7–9).

### A.  Legal Standard for Evidentiary Objections

The Ninth Circuit Court of Appeals ("Ninth Circuit") applies a double standard to the admissibility requirement for evidence at the summary judgment stage. *See* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2738 (3d. ed. 1998).

With respect to the non-movant's evidence offered in opposition to a motion for summary judgment, the Ninth Circuit has stated that the proper inquiry is not "the admissibility of the evidence's form" but rather whether the *contents* of the evidence are admissible. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Celotex*, 477 U.S. at 324 ("We do not mean that the *nonmoving party* must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." (emphasis added)). Accordingly, the Ninth Circuit has held, albeit sometimes implicitly, that a non-movant's hearsay evidence may establish a genuine issue of material fact precluding a grant of summary judgment. *See Fraser*, 342 F.3d at 1036-37; *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988). *But see Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 779 (9th Cir. 2002). Thus, "[m]aterial in a form not admissible in evidence may be used to *avoid*, but not to *obtain* summary judgment, except where an opponent bearing a burden of proof has failed to satisfy it when challenged after completion of relevant

---

[2] The Court notes that portions of Plaintiff's Controverting Statement of Facts ("PCSOF") (Doc. 55) filed in response to Defendants' Motion for Summary Judgment also rely on Plaintiff's Affidavit. (*See* PCSOF ¶¶ 2–8).

discovery." *Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993).

The Ninth Circuit has required, however, that evidence offered in support of a motion for summary judgment be admissible both in form and in content. *See Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976). Accordingly, unauthenticated documents cannot be considered in ruling on a motion for summary judgment because authentication is a "condition precedent to admissibility." *Orr*, 285 F.3d at 773; *see also Canada*, 831 F.2d at 925 ("[D]ocuments which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment."). A document authenticated through personal knowledge must be supported with an affidavit "[setting] out facts that would be admissible in evidence" and "show[ing] that the affiant or declarant is competent to testify on the matters stated."[3] Fed. R. Civ. P. 56(c)(4).

Similarly, evidence containing hearsay statements is admissible only if offered in opposition to the motion. "Because '[v]erdicts cannot rest on inadmissible evidence' and a grant of summary judgment is a determination on the merits of the case, it follows that the *moving* party's affidavits must be free from hearsay." *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1121 (E.D. Cal. 2006) (quoting *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)).

However, unlike objections to foundation and hearsay, objections that evidence is not relevant or is misleading are superfluous at the summary judgment stage. These objections are "duplicative of the summary judgment standard itself" because the Court necessarily considers only relevant evidence in its ruling, *see Burch*, 433 F. Supp. 2d at 1119, and because Federal Rule of Evidence 403 provides for the exclusion of evidence that may "mislead the *jury*," not the Court, *see* Fed. R. Evid. 403 (emphasis added); *see also Bafford v. Travelers Cas. Ins. Co. of Am.*, 2012 WL 5465851, at *8 (E.D. Cal.

---

[3] A party may comply with the affidavit requirement by offering a declaration complying with 28 U.S.C. § 1746. Evidence may also be authenticated by other means other than personal knowledge, such as any of the approaches enumerated in Federal Rule of Evidence 901. *See Orr*, 285 F.3d at 774.

- 6 -

1 Nov. 8, 2012).

### B. Plaintiff's Affidavit

With regard to Plaintiff's Affidavit (Doc. 49-1 at Ex. B, 75–80), Defendants generally argue that the Court should "exclude Plaintiff's Affidavit completely because Plaintiff never disclosed the alleged facts contained therein and because there is no evidence that any of the information in the Affidavit was ever disclosed to the Plan." (Doc. 60 at 7). The Court interprets Defendants argument as both a request for discovery sanctions under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 26 and 37, and that the Court not give credence to Plaintiff's self-serving and otherwise unsupported Affidavit. (*See* Doc. 60 at 1–5). Additionally and relatedly, throughout Defendants' papers and oral argument, Defendants argue that Plaintiff should be judicially estopped from admitting her Affidavit because "Plaintiff has repeatedly argued that this Court's review of her claim is limited to the administrative record" (Doc. 63 at 1) and Plaintiff has consistently objected to and successfully fought any disclosure or discovery of the evidence contained within the affidavit (Doc. 60 at 1–5).

### 1. Judicial Estoppel

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *In re Jacobson*, 676 F.3d 1193, 1201 (9th Cir. 2012).

> "[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8 (2000)). It is an equitable doctrine invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)) (alteration omitted).

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir.

2012). The Supreme Court of the United States has instructed that there are no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire*, 532 U.S. at 751. However, the Supreme Court identified three factors that courts should consider in a given case when determining the applicability of the doctrine:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750–51 (citations and quotations omitted).

First, Plaintiff explicitly and repeatedly represented that the Court can and must decide all relevant issues, including whether or not Plaintiff applied for long-term disability benefits, based solely on the sparse administrative record before the Court. (Pl.'s Mem. Re: Disc. Dispute, Doc. 44 at 1–3; Tr. of Nov. 19, 2013 Hr'g re: Disc. Dispute at 5:7–24 (arguing that under Ninth Circuit case law, "except in extraordinary circumstances, the Court should not entertain any supplement to the record."); *id.* at 8:14–9:4 (arguing that the administrative record disclosed by Defendants "clearly show[s] and prove[s] that [Plaintiff] intended to submit a claim for disability under the plan. . . . [The record] show[s] that [Plaintiff] submitted her claim and it was rejected."); *see* Defs.' Mem. Re: Disc. Dispute, Doc. 45 at 1–4, Exs. A–C; *see also* Pl.'s Mot. For Remand, Doc. 47 at 3 (requesting remand to the ERISA plan administrator because "courts generally do not consider ancillary testimony in deciding ERISA benefits cases.")).

Moreover, with specific regard to discovery about whether Plaintiff actually filed for long-term disability benefits, Plaintiff has repeatedly asserted that "there is no authority in the Ninth Circuit permitting an ERISA Plan Administrator to supplement the

1   administrative record. In fact, governing case law in the Ninth Circuit does not support"
2   Defendants' discovery requests." (*See, e.g.*, Doc. 44 at 1; Doc. 45; Doc. 66). Indeed,
3   Plaintiff devotes an entire section of her Response to Defendants' Motion for Summary
4   Judgment to the argument that Plaintiff, herself, "possesses neither the right nor the duty
5   to supplement the record in this case. That 'record' consists solely of the documents
6   produced by [Defendants] in this case; no more, no less." (Doc. 54 at 4–5 (justifying her
7   failure to disclose because "Plaintiff elected to comply with the law which did not allow
8   her to 'disclose' or supplement beyond the record produced by [Defendants]")).
9   Consequently, throughout this litigation, Plaintiff has steadfastly refused to comply with
10  *any* discovery request, including answering interrogatories, allowing Plaintiff to be
11  deposed, or submitting an affidavit.

12  Now, in stark contrast to Plaintiff's previous assertions, Plaintiff attempts to
13  supplement the administrative record before the Court with an Affidavit alleging a litany
14  of new "facts" in support of her motion for summary judgment (and in opposition to
15  Defendants' motion). (*Compare* Admin. Record, Doc. 49-1, Ex. A, *with* Pl.'s Aff., Doc.
16  49-1, Ex. B). Thus, the Court finds that Plaintiff's current position is clearly inconsistent
17  with her earlier position.

18  With regard to the third[4] *New Hampshire* factor, an unfair advantage, Defendants
19  argue that "Plaintiff cannot ambush [Defendants] in this way. Her failure to timely and
20  adequately disclose her intended testimony and her refusal to submit to a deposition
21  deprived [Defendants] of the opportunity to evaluate Plaintiff's allegations and gather
22  and present contradicting evidence." (Doc. 60 at 5). Defendants further argue that,
23  through [Plaintiff's] inconsistent positions, Plaintiff effectively turns "this action into a
24  one-sided fight in which she can introduce any evidence she wishes in an effort to
25  establish her entitlement to long-term disability benefits, while limiting [Defendants] to

---

[4] The Court notes that the second *New Hampshire* factor, Plaintiff's success with the previous position, is in applicable here. The Court denied Defendants' discovery request because it was untimely brought weeks after discovery closed. (Doc. 46). The Court has not ruled on the merits of Plaintiff's argument in opposition to discovery.

1 the scant administrative record." (Doc. 60 at 4).

2 In Reply, Plaintiff argues (Doc. 64 at 1–2) that the information recited in Plaintiff's Affidavit *was* disclosed to Defendants via the "factual basis" section of the Joint Proposed Case Management Plan (Doc. 32 at 2). The implication, apparently, is that the admission and consideration of Plaintiff's Affidavit is not an unfair detriment to Defendants. Plaintiff is incorrect for three reasons.

First, the Court notes that it requires parties to file a Joint Proposed Case Management Plan purely for the education and edification of the Judge. A Joint Proposed Case Management Plan is not a discovery device and Plaintiff has not furnished any authority to the Court to suggest otherwise.

Second, as merely an elaboration of the factual allegations in Plaintiff's unverified Complaint (Doc. 1 at Ex. A), Plaintiff's pre-discovery Joint Proposed Case Management Plan only provides notice to Defendants of the *alleged* "factual basis" supporting Plaintiff's claims. In this way, Plaintiff's "factual basis" identifies the allegations that both Plaintiff and Defendants should investigate for veracity.[5] Merely reading Plaintiff's "factual basis," however, certainly cannot be considered meaningful investigation by Defendants. Thus, Plaintiff's "disclosure" absent any meaningful opportunity for further investigation necessarily prejudices Defendants in their ability to verify the allegations' veracity or to present contradictory evidence.

Third, like Plaintiff's unverified Complaint, Plaintiff's unsupported "factual basis" consists of what Plaintiff hopes to be able to prove post-discovery through the introduction of admissible evidence. Thus, the Joint Proposed Case Management Plan has no greater evidentiary value than Plaintiff's unverified Complaint—something that is *not* evidence and is *not* admissible at the summary judgment stage. *See* Fed. R. Civ. P.

---

[5] This case provides an illustrative example of the uncertain nature of unverified and unsupported allegations. Plaintiff's pre-discovery "factual basis" alleges that "[s]he received short term disability benefits." (Doc. 32 at 2). However, after Plaintiff's counsel's investigation into the underlying facts, Plaintiff now contends that Defendants "fail[ed] to pay [Plaintiff's short term disability] benefits for which she had been approved." (Doc. 48 at 6).

- 10 -

56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials"); *see also*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48 (The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment.); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (the non-movant "must produce at least some significant probative evidence tending to support the complaint").

Here, if the Court were to countenance Plaintiff's actions and admit and consider Plaintiff's Affidavit, then Plaintiff will have successfully converted summary judgment into a one-sided affair at great detriment to Defendants. Absurdly, after refusing to participate in discovery on the grounds that the Court can only consider the administrative record, Plaintiff now asks the Court to allow Plaintiff to supplement the administrative record with nothing more than an unsupported and self-serving affidavit that Plaintiff denied Defendants any meaningful opportunity to investigate. Thus, the Court finds that admission and consideration of Plaintiff's Affidavit unfairly advantages Plaintiff and prejudices Defendants.

In sum, the Court finds that Plaintiff's clearly inconsistent position vis-à-vis supplementing the administrative record with Plaintiff's Affidavit provides Plaintiff an unfair advantage and prejudices Defendants. Therefore, the Court finds that Plaintiff is judicially estopped from supplementing the administrative record with Plaintiff's Affidavit. Accordingly, the Court will not admit or consider Plaintiff's Affidavit when determining the merits of the pending cross-motions for summary judgment. Instead, as Plaintiff has repeatedly and expressly advocated throughout this litigation, the Court will only consider the administrative record, scant as it may be.

### 2. Discovery Sanctions

Defendants' argue that Plaintiff's refusal to timely disclose the various contents of

1  Plaintiff's Affidavit during the discovery process justifies excluding Plaintiff's Affidavit
2  in its entirety as a sanction under Fed. R. Civ. P. 26 and 37. (Doc. 60 at 1–7). Because the
3  Court excludes Plaintiff's Affidavit on judicial estoppel grounds, the Court need not
4  determine whether Plaintiff's Affidavit should also be excluded as a discovery sanction.

### C. Defendants' Specific Objections

Defendants specifically object to numerous paragraphs of the PSOF on various hearsay and foundational grounds, including a lack of Plaintiff's personal knowledge. (Doc. 59 at 2–5 (objecting to PSOF ¶¶ 8, 18–21, 24, 28–33, 35–36, 39, 42–43)). First, because the Court excludes Plaintiff's affidavit in its entirety, the Court need not rule on Defendants' specific hearsay, foundational, and other objections to specific statements within the Affidavit. Second, to the extent that Defendants specifically object to paragraphs of the PSOF supported by something other than Plaintiff's Affidavit, the Court overrules Defendants' objections with respect to consideration of Defendants' Motion for Summary Judgment. *Quanta Indem. Co. v. Amberwood Dev., Inc.*, No. CV-11-01807-PHX-JAT, 2014 WL 1246144, at *2 (D. Ariz. Mar. 26, 2014) (holding that evidence that lacks foundation or contains hearsay statements is admissible "if offered in opposition to [a] motion [for summary judgment.]"). However, where Defendant objects that the PSOF misstates the evidentiary record presented or is irrelevant, the Court, of course, examines the record and comes to its own conclusion about the contents and relevance of the record. *Id.* at *3 ("[O]bjections that evidence is not relevant or is misleading are superfluous at the summary judgment stage . . . because the Court necessarily considers only relevant evidence in its ruling[.]").[6]

### IV. DEFENDANTS' MOTION

Defendant moves for summary judgment on several grounds, including that the Court does not have jurisdiction to consider Plaintiff's eligibility for benefits under the civil enforcement mechanism of ERISA, 29 U.S.C. § 1132(a)(1)(B), because Plaintiff

---

[6] Because the Court grants (*infra* pt. IV) Defendants' Motion for Summary Judgment, the Court need not consider the merits of Plaintiff's cross-motions or, therefore, the admissibility of Plaintiff's evidence in support of Plaintiff's cross-motions.

- 12 -

1 presents no evidence that she ever applied for the long-term disability benefits at issue.
2 (Doc. 50 at 8).

3 ERISA allows a beneficiary of a long-term disability plan to bring a civil enforcement action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Here, Plaintiff alleges that Defendants refused to process Plaintiff's application for long-term disability benefits and Plaintiff seeks remand to the Plan Administrator for a determination of benefits. (*See, e.g.*, Complaint, Doc. 1 at Ex. A; Pl.'s Mot. for Partial Summ. J., Doc. 48; Pl.'s Mot. for Remand, Doc. 47). Accordingly, the Court's federal-question jurisdiction rests on Plaintiff ostensibly bringing the instant action to enforce a right under the terms of the ERISA-governed Plan. (*Id.*).

A beneficiary cannot "enforce a right under the terms of a plan," however, unless a right exists under the terms of the plan. Thus, Plaintiff cannot enforce her right to a determination of benefits unless Plaintiff demonstrates that she actually has a right to a determination of benefits. Plaintiff attempts to meet this burden by alleging that she applied for long-term disability benefits, thus engendering a right to a determination of benefits under the plan. (*See, e.g.* Doc. 54 at 5–8; Doc. 32 at 2; Docs. 47–48; Complaint, Doc. 1 at Ex. A).

In Defendants' Motion for Summary Judgment, Defendants point to a lack of evidence in the administrative record and argue that Plaintiff cannot demonstrate a genuine dispute of material fact that Plaintiff ever actually applied for long-term disability benefits. (Doc. 50 at 8–10). Consequently, Plaintiff (the non-movant) bears the burden of establishing the existence of material fact or a genuine dispute of material fact. *Celotex*, 477 U.S. at 322.

Here, Plaintiff offers no direct evidence that she ever filed a claim for long-term disability benefits.[7] Instead, Plaintiff relies on the unsupported allegations in her

---

[7] The Court notes that even if Plaintiff were not judicially estopped from

1 Complaint and pleadings, and on inferences and logic drawn from the scant administrative record (Doc. 54 at 5–8 (citing Admin. Record, Doc. 49-1 at Ex. A)). First, with regard to Plaintiff's unverified allegations, Plaintiff's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48.

Second, with regard to Plaintiff's inferences and logic, in the summary judgment context, Plaintiff "is entitled to the benefit of only *reasonable* inferences that may be drawn from the evidence put forth." *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680 (9th Cir. 1985) (emphasis added). Here, however, Plaintiff's requested inferences and logic are not reasonable.

To prove that Plaintiff filed a long-term disability claim, Plaintiff points to the scant administrative record consisting largely of Plaintiff's personal employment record maintained by Defendants. Specifically, Plaintiff identifies ten pages of the administrative record relevant to this issue[8]:

- Page 62—October 7, 2004 HR emails indicating that Plaintiff has requested FMLA leave, may request short-term disability benefits, and wants information about paying insurance premiums in advance. (Admin. Record, Doc. 49-1 at 63).
- Page 63—October 8, 2004 letter to Plaintiff from HR. The letter expresses that Plaintiff's noticed leave has been preliminarily designated FMLA leave. Additionally, the letter encloses the "Request for Medical Leave of Absence" (page 58) and "Certificate of Healthcare Provider" (page 59–60) forms completed by Plaintiff on November 8, 2004. Notably, the letter also explains that Plaintiff may "elect to continue [her] Group Health benefits . . . by maintaining [her]

---

supplementing the administrative record with her Affidavit, Plaintiff's uncorroborated, unsupported, and self-serving Affidavit does not establish a genuine issue of material fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (refusing "to find a 'genuine issue' [of material fact] where the only evidence presented is 'uncorroborated and self-serving' testimony" (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996))).

[8] The Court has identified a single additional page relevant to the issue—page 58.

- 14 -

biweekly premiums." (*Id.* at 64).

- Page 61—November 8, 2004 email and November 9, 2004 note between HR representatives regarding a conversation with Plaintiff about the applicable paperwork. The note attached to the printed email ambiguously states "will owe 4 payments thru end of 2004 . . . will have 1 STD ck once paperwork rec'd." Notably, there is no mention of long-term disability. (*Id.* at 62).
- Page 57—November 8, 2004 letter from Plaintiff to Defendants' HR representative. Plaintiff expresses gratitude for help "with these matters" and indicates that she attached a check for insurance premiums and a medical leave of absence form. Plaintiff also requests that HR advise her of "any problems" and confirm receipt of the check. (*Id.* at 58).
- Page 58—"Request for Medical Leave of Absence" form completed by Plaintiff on November 8, 2004. Plaintiff requests medical leave for a disability and surgery beginning on October 8, 2004. Notably, Plaintiff estimates that the medical leave will end on January 1, 2005. (*Id.* at 59).
- Pages 59 and 60—"Certificate of Healthcare Provider" form completed by Plaintiff's doctor on November 18, 2004. The form explains that due to a back condition and scheduled surgery requiring inpatient hospitalization, Plaintiff will be unable "to perform work of any kind" until she recovers. Notably, the form expresses that an anticipated date of return is "pending surgery undetermined at present." (*Id.* at 60–61).
- Page 50—"2005 Annual Enrollment" form for employer provided benefits. Plaintiff completed this form on November 17, 2004 and does not appear to have changed any elections from the previous year. This includes continuing the long-term disability insurance elective. (*Id.* at 51).
- Pages 53–55—"Enrollment and Salary Reduction Agreement" completed by Plaintiff on May 3, 2003. This new-employee form confirms that Plaintiff's long-term disability insurance premium is an after-tax payroll deduction. This also

indicates that Plaintiff elected to receive long-term disability coverage upon her initial hiring in 2003. (*Id.* at 54–56).

When read as a whole in chronological order, it is readily apparent that the administrative record does not support a reasonable inference that Plaintiff ever applied for long-term disability benefits. Plaintiff clearly communicated with Defendants about medical leave and short-term disability benefits so that she could undergo surgery. However, the "Request for Medical Leave of Absence" form, completed by Plaintiff, demonstrates that Plaintiff anticipated and planned for an approximately four-month disability, not a long-term disability. Therefore, this form cannot support a reasonable inference that Plaintiff actually filed a long-term disability claim. Similarly, Plaintiff's doctor's unwillingness to express an exact date of return prior to the surgery and medical opinion that Plaintiff could not perform work during the pre-surgery and recovery periods does not create a reasonable inference that Plaintiff actually filed a claim for long-term disability benefits.

Indeed, the only mention of "long-term disability" in the administrative record is found in Plaintiff's 2005 Annual Enrollment form and Plaintiff's new-hire "Enrollment and Salary Reduction Agreement." Plaintiff claims that these forms evidence Plaintiff filed for long-term disability benefits because, why else would Plaintiff voluntarily elect for long-term disability coverage in November 2004 (during her medical leave) when the cost comes from Plaintiff's own after-tax pay? (Doc. 54 at 6–8). Plaintiff conveniently ignores, however, that in November 2004, Plaintiff merely elected not to *change* the various health and insurance benefits that she originally elected when a new hire. Plaintiff did not use the 2005 open enrollment period to obtain new coverage. Thus, Plaintiff's (possibly rhetorical) question is easily answered: Plaintiff chose to pay for long-term disability coverage, like she had done in the past, in case she one day had a need for it.[9] Thus, at best, Plaintiff's decision to maintain long-term disability coverage engenders a reasonable inference that Plaintiff *intended* to apply for long-term disability benefits if

---

[9] A rationale foundational to insurance consumption.

- 16 -

the need arose. It is not reasonable, however, to infer that in this case, Plaintiff *actually* applied for long-term disability benefits.

In sum, the administrative record before the Court does not support a reasonable inference that Plaintiff ever filed a claim for long-term disability benefits.[10] Consequently, Plaintiff has failed in her burden of establishing a genuine dispute of material fact that she filed a claim for long-term disability benefits. Without the prerequisite application for benefits, Plaintiff does not have an enforceable right under the plan. Without an enforceable right, the Court does not have jurisdiction over the instant litigation under the civil enforcement mechanism of ERISA, 29 U.S.C. § 1132(a)(1)(B). Accordingly, the Court grants Defendants' Motion for Summary Judgment.[11]

## V. PLAINTIFF'S MOTIONS

Plaintiff's Motion for Remand (Doc. 47) and Partial Summary Judgment (Doc. 48) both seek remand to the plan administrator for a determination of benefits. Because the Court grants Defendants' Motion for Summary Judgment, the Court denies Plaintiff's two motions without reaching their merits.

However, to the extent that Plaintiff's Motion for Partial Summary Judgment alleges, for the first-time, that Defendants failed to pay Plaintiff short-term disability payments to which she was entitled, the Court finds such a claim untimely and holds that Plaintiff has waived any such a claim. (*See* Complaint, Doc. 1 at Ex. A (seeking only long-term disability benefits); Doc. 32 at 2 (stating that Plaintiff received short-term disability benefits)).

---

[10] For the first time, Plaintiff attempts to address the deficiencies in the administrative record by implying bad faith in Defendants' disclosures of Plaintiff's personal records and claim files. (*See* Doc. 54 at 5–6). Plaintiff provides no evidence of bad faith, and instead attempts to argue that Defendants' lack of production of Plaintiff's short-term disability claim file (a file irrelevant to the instant action) demonstrates Defendants' bad faith. The Court finds Plaintiff's bad faith argument severely lacking in both timeliness and evidence, and thus will not confer the benefits of any adverse inference in favor of Plaintiff.

[11] Because the Court grants Defendants' motion on this ground, the Court need not consider the merits of Defendants remaining grounds for summary judgment.

## VI. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Remand (Doc. 47) and Motion for Partial Summary Judgment (Doc. 48) are **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 50) is **GRANTED**. The Clerk of the Court shall enter judgment for the Defendants; Plaintiff shall take nothing.[12]

Dated this 4th day of September, 2014.

James A. Teilborg
Senior United States District Judge

---

[12] As indicated above, Defendants moved for summary judgment on multiple theories. The Court has found that at least one of the theories justifies summary judgment; the Court did not reach the merits of the other theories.